UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| Joseph P. Cuviello, | No. 16-cv-02584-KJM-KJN |
| Plaintiff, | ORDER |
| v. | |
| City of Vallejo, et al., | |
| Defendants. | |

Defendants City of Vallejo ("City") and Vallejo Police Officer M. Koutnik move to dismiss plaintiff Joseph Cuviello's first, second and fourth causes of action. Mot. to Dismiss ("MTD"), ECF No. 73, at 9, 11–13.  In addition, defendants argue Officer Koutnik is entitled to qualified immunity in the face of plaintiff's constitutional claims.  *Id.* at 10–11.  Plaintiff filed an opposition.  Opp'n, ECF No. 74.  Defendants replied.  Reply, ECF No. 75.  The court heard argument on July 24, 2020, with Matthew Strugar appearing for plaintiff and Richard Osman appearing for defendants.  For the reasons below, the court DENIES in full defendants' motion to dismiss.

I.     **BACKGROUND**

   A.     **Factual Background**

This case involves plaintiff's participation in eight demonstrations, his use of a bullhorn at the demonstrations, and the constitutionality of a municipal noise ordinance.  On June 20, 2015,

1

1    plaintiff attended a demonstration at the Six Flags Discovery Kingdom in Vallejo, California.

2    Sec. Am. Compl. ("SAC") ¶ 22, ECF No. 72.  He alleges that, prior to the demonstration, he

3    researched Vallejo Municipal Code § 7.84.020, which regulates noise disturbances.  *Id.* ¶¶ 23–26.

4    He concluded that using his bullhorn would not violate the ordinance because it "could not be

5    classified as either 'loud unnecessary noise or a noise disturbance.'"  *Id.* ¶ 26.  At the

6    demonstration, plaintiff used an electronic bullhorn; once he did, another attendee told plaintiff

7    Vallejo City Police Officer Garcia had informed the other attendee that individuals must apply for

8    and receive a permit for using a bullhorn.  *Id.* ¶ 27.  Plaintiff approached Officer Garcia, who

9    showed him the text of Vallejo Municipal Code § 8.56, which required a permit prior to using any

10    "sound amplifying" device.  *Id.* ¶ 28.  After plaintiff spoke with Officer Garcia, plaintiff did not

11    use the bullhorn further that day and resolved to apply for a permit prior to the next

12    demonstration.  *Id.* ¶ 29.  Approximately two weeks later, on July 4, 2015, plaintiff attended

13    another demonstration, but claims he did not apply for a permit beforehand because the

14    organizers wished for it "to be unannounced."  *Id.* ¶ 30.  To prepare for another demonstration

15    planned for July 18, 2015, plaintiff sought to apply for a permit.  *Id.* ¶ 31.  After calling the

16    Vallejo Police Department and receiving a fax number to send in the permit application, plaintiff

17    transmitted the application on July 14, 2015 and did not receive a response.  *Id.* ¶¶ 31–33.  "[F]or

18    fear of being arrested," plaintiff did not use the bullhorn at the July 18, 2015 demonstration.  *Id.*

19    ¶ 34.

20    Plaintiff also attended five additional demonstrations in 2015 and 2016 and describes a

21    series of intervening communications and events.  As pled, plaintiff spent July, August and

22    September 2015 researching precedent regarding municipal noise ordinances; as a result, he

23    determined the permit requirement in § 8.56 to be unconstitutional.  *Id.* ¶ 35.  Upon reaching this

24    conclusion, plaintiff emailed three City officials on September 11, 2015 to inform them of his

25    opinion and his intent to use the bullhorn at a demonstration planned for the following day,

26    September 12, 2015.  *Id.* ¶¶ 37–38.  In response to plaintiff's email, the City Attorney articulated

27    the City's position that the ordinance was constitutional, *id.* ¶ 39; nevertheless, plaintiff did attend

28    a demonstration on September 15, 2015 and used a bullhorn.  *Id.* ¶ 40.

On October 31, 2015, plaintiff attended another demonstration in which both plaintiff and another demonstrator, Lisa Soldivini, used the bullhorn as well as a large television to project their message. *Id.* ¶ 41.  After Ms. Soldivini used the bullhorn without interruption, plaintiff began to do the same. *Id.*  According to plaintiff, Officer Koutnik then approached him, asked whether he had a permit, and upon hearing he did not, told him he could not use the bullhorn. *Id.* Plaintiff claims Officer Koutnik stated he would not arrest plaintiff, but he would confiscate the bullhorn "as evidence of a crime" if plaintiff continued to use it. *Id.*  "[F]or no other reason than . . . [Officer] Koutnik's threat to seize it," plaintiff claims he stopped using the bullhorn. *Id.* Although plaintiff says Officer Koutnik made these statements regarding the bullhorn, the officer told plaintiff he would not prevent plaintiff from using the large television. *Id.*

On three additional occasions—November 21, 2015, May 28, 2016, and June 18, 2016— plaintiff attended demonstrations, without his bullhorn, for fear allegedly based on the City Attorney's threats of enforcement and Officer Koutnik's threat of seizure. *Id.* ¶ 43.  Other attendees brought bullhorns and used them, without a permit, despite the presence of officers. *Id.* ¶ 44.

### B.    Procedural Background

On October 31, 2016, plaintiff, proceeding pro se, filed suit against defendants.  Compl., ECF No. 1.  On March 17, 2017, plaintiff filed a motion for preliminary injunction, ECF No. 15; after the court found his notice defective, ECF No. 17, plaintiff filed an amended motion on March 27, 2017, Mot. for Prelim. Inj., ECF No. 18.  As provided by this district's Local Rules regarding pro se litigants, a Magistrate Judge held the hearing on plaintiff's preliminary injunction.  Minutes, ECF No. 23.  On April 28, 2017, the Magistrate Judge issued Findings and Recommendations recommending this court deny plaintiff's motion for a preliminary injunction. Findings and Recommendations on Mot. for Prelim. Inj., ECF No. 24.  Defendants then filed a motion for partial summary judgment, Mot. for Partial Summ. J. ("MSJ"), ECF No. 25; the Magistrate Judge issued Findings and Recommendations recommending this court grant defendants' motion for partial summary judgment and dismiss plaintiff's fifth claim for deprivation of his First Amendment rights, Findings and Recommendations on Mot. for Partial

3

Summ. J., ECF No. 39.  On September 1, 2017, this court adopted the Magistrate Judge's

Findings and Recommendations and denied plaintiff's motion for a preliminary injunction.

Order, ECF No. 41.

On September 25, 2017, plaintiff appealed this court's order denying his motion for a

preliminary injunction.  Not. of Interlocutory Appeal, ECF No. 42.  As plaintiff's appeal was

pending before the Ninth Circuit, on March 29, 2018, this court declined to adopt the Magistrate

Judge's Findings and Recommendations that it grant defendants' motion for partial summary

judgment.  Order, ECF No. 48.  Meanwhile, on May 22, 2018, the Vallejo City Council discussed

amending Vallejo Municipal Code § 8.56.  SAC ¶ 47.  During this discussion, the City Attorney

described the amended ordinance as "just a notification ordinance" to encourage possible

demonstrators to let the City know when they plan to have an event.  *Id.*  Following debate, the

City adopted the amended ordinance on June 12, 2018.  *Id.* ¶ 48.  Plaintiff claims there are

significant differences between the amended ordinance and the original ordinance, though the

amended ordinance still contains the permit requirement.  *Id.* ¶ 49.

On December 10, 2019, a Ninth Circuit panel majority reversed this court's denial of

plaintiff's motion for a preliminary injunction and remanded the case back to this court for further

proceedings.  *See Cuviello v. City of Vallejo*, 944 F.3d 816, 821 (9th Cir. 2019).  This court

subsequently vacated its previous order, granted plaintiff's motion for a preliminary injunction,

enjoined the City from enforcing the ordinance, and referred the matter back to the Magistrate

Judge for pretrial proceedings.  Order, ECF No. 56.  Plaintiff then retained counsel, and as

provided by Local Rule 302(c)(21), the Magistrate Judge referred the case back to this court after

plaintiff retained counsel.  Order, ECF No. 65.  The court granted the parties' stipulation for leave

to file a Second Amended Complaint, Minute Order, ECF No. 71; plaintiff filed a Second

Amended Complaint on April 29, 2020.  *See generally* SAC.

In the operative complaint, plaintiff brings four claims: (1) municipal liability under 42

U.S.C. § 1983 for violation of plaintiff's First Amendment Right to Free Exercise of Speech,

Assembly, and Press and Fourteenth Amendment Right to Equal Protection, *id.* ¶¶ 64–69; (2)

violation of liberty of speech under Article 1, Sections 2(a) and 3(a) of the California

1    Constitution, *id.* ¶¶ 70–72; (3) a facial and as applied challenge to Vallejo Municipal Code § 8.56,

2    as amended in 2018, *id.* ¶¶ 73–81; and (4) violation of California Civil Code § 52.1, the Bane

3    Act, *id.* ¶¶ 82–86.  Plaintiff names as defendants on each claim the City of Vallejo and Officer

4    Koutnik.  *Id.* ¶¶ 10–11.

## II.    LEGAL STANDARD

6           Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a party may move to dismiss

7    a complaint for "failure to state a claim upon which relief can be granted."  A court may dismiss

8    "based on the lack of cognizable legal theory or the absence of sufficient facts alleged under a

9    cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

10           Although a complaint need contain only "a short and plain statement of the claim showing

11    that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), in order to survive a motion to

12    dismiss this short and plain statement "must contain sufficient factual matter . . . to 'state a claim

13    to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell*

14    *Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A complaint must include something more

15    than "an unadorned, the-defendant-unlawfully-harmed-me accusation" or "'labels and

16    conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *Id.* (quoting

17    *Twombly*, 550 U.S. at 555).  Determining whether a complaint will survive a motion to dismiss

18    for failure to state a claim is a "context-specific task that requires the reviewing court to draw on

19    its judicial experience and common sense." *Id.* at 679.  Ultimately, the inquiry focuses on the

20    interplay between the factual allegations of the complaint and the dispositive issues of law in the

21    action.  *See Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

22           In making this context-specific evaluation, this court must construe the complaint in the

23    light most favorable to the plaintiff and accept as true the factual allegations of the complaint.

24    *Erickson v. Pardus*, 551 U.S. 89, 93–94 (2007).  This rule does not apply to "'a legal conclusion

25    couched as a factual allegation,'" *Papasan v. Allain*, 478 U.S. 265, 286 (1986), *quoted in*

26    *Twombly*, 550 U.S. at 555, nor to "allegations that contradict matters properly subject to judicial

27    notice" or incorporated by reference into the complaint.  *Sprewell v. Golden State Warriors*,

28    266 F.3d 979, 988–89 (9th Cir. 2001).

1   III.   **DISCUSSION**

2          In their motion to dismiss, defendants assert the following: (1) the factual allegations do

3   not support plaintiff's first claim for violation of the Fourteenth Amendment; (2) Officer Koutnik

4   is entitled to qualified immunity from plaintiff's constitutional claims; (3) plaintiff fails to state a

5   claim for relief under Article 1, Sections 2(a) and 3(a) of the California Constitution; and

6   (4) plaintiff's fourth claim fails to allege facts sufficient to state a claim for relief under California

7   Civil Code § 52.1.  MTD at 9–13.

8          In his opposition, plaintiff responds to each of the City's arguments but also argues the

9   court should deny defendants' motion for its procedural deficiencies, Opp'n at 12; namely,

10  plaintiff contends defendants failed to meet and confer with plaintiff before filing, *id.*, and

11  defendants' motion violates the Federal Rules of Civil Procedure, *id.* at 12–15.

12         The court addresses these arguments in turn, beginning with plaintiffs' threshold

13  procedural issues.

14         A.   **Procedural Matters**

15         Plaintiff argues specifically that: (1) the court should not consider defendants' motion

16  because they failed to comply with this court's meet and confer requirement in its standing order,

17  *id.* at 12; (2) defendants' motion is untimely and violates Federal Rule of Civil Procedure 12(b),

18  *id.* at 12–14; and (3) Federal Rule of Civil Procedure 12(g)(2) bars defendants' motion because it

19  raises defenses that were available but omitted from their previous motion for partial summary

20  judgment.  *Id.* at 14–15; *see also* Mot. for Partial Summ. J.

21              1.   **Meet and Confer Requirement**

22         Plaintiff is correct that defendants did not comply with this court's requirement for the

23  parties to meet and confer prior to filing the pending motion.  Opp'n at 12.  The meet and confer

24  requirement continues to apply in this case, notwithstanding its long procedural history, as

25  defendants recognize and as reflected in the parties' discussions prior to plaintiff's filing his

26  amended complaint.  Reply at 6.  Despite the recency of the discussion regarding the amended

27  complaint, additional meet and confer could have clarified plaintiff's claims and narrowed the

1    dispute brought to the court.  Nevertheless, in the interest of elevating the merits without further

2    delay, the court resolves the motion on the merits below.  Defendants are cautioned to studiously

3    observe the meet and confer requirement going forward.

**2.      Rule 12(b)**

5          Plaintiff also asserts his amended complaint did not "revive defenses and objections,"

6    which he says defendants waived by not asserting them in response to plaintiff's original

7    complaint.  Opp'n at 13 (citing *Brooks v. Harlon Rip Caswell*, No. 3:14-CV-01232-AC, 2016

8    WL 1056977 (D. Or. Mar. 2, 2016)).  Plaintiff notes the amended complaint adds only "a minor

9    bit of new matter not included in his original complaint—the allegations about the 2018

10   amendment to the ordinance at issue." *Id.* at 13–14.  The current motion, plaintiff argues, does

11   not challenge any of the "new matter" and thus defendants do not have the right to file this pre-

12   answer motion.  *Id.*

13         In reply, defendants maintain that under Federal Rule of Civil Procedure 12(h)(2) "waiver

14   does not apply to the defense of failure to state a claim."  Reply at 6.  Defendants also point to

15   Ninth Circuit precedent allowing courts to entertain motions to dismiss an amended complaint

16   under Rule 12(b)(6), even when the defendant has brought a previous motion to dismiss an earlier

17   complaint.  *Id.* at 6–7 (citing *In re Apple iPhone Antitrust Litig.*, 846 F.3d 313, 317–20 (9th Cir.

18   2017), *aff'd on a different question*, 139 S. Ct. 1514 (2019)).

19         The portion of Rule 12 on which plaintiff relies provides as follows:  "Failure to state a

20   claim upon which relief can be granted, to join a person required by Rule 19(b), or state a legal

21   defense to a claim may be raised: (A) in any pleading allowed or ordered under Rule 7(a); (B) by

22   a motion under Rule 12(c); or (C) at trial."  Fed. R. Civ. P. 12(h)(2).  Rule 7(a) identifies the

23   following as the pleadings it covers: "(1) a complaint; (2) an answer to a complaint; (3) an answer

24   to a counterclaim designated as a counterclaim; (4) an answer to a crossclaim; (5) a third-party

25   complaint; (6) an answer to a third-party complaint; and (7) if the court orders one, a reply to an

26   answer."  Fed. R. Civ. P. 7(a).  Rule 12 also provides that a party waives the 12(b)(2)-(5) defenses

27   of lack of personal jurisdiction, improper venue, insufficient process, and insufficient service of

28   process when it omits the defense from a 12(g)(2) motion, a 12(h)(1) motion or in a responsive

1    pleading or amendment allowed in Rule 15(a)(1).  *Id.* 12(h)(1).  The court addresses Rule

2    12(g)(2) below.

3          Here, defendants did not waive the defense they advance in the pending motion, failure to

4    state a claim for relief under Rule 12(b)(6), because Rule 12(h)(2) allows a defendant to assert

5    this defense in other ways, including at trial.  Though defendants invoke the defense in a new

6    Rule 12(b)(6) motion, as opposed to preserving it as a defense in an answer, or making a Rule

7    12(c) motion for judgment on the pleadings as Rule 12(h)(2) would allow, the court will not deny

8    the pending motion on that ground.  As the Ninth Circuit has observed, "relegating defendants to

9    the three procedural avenues specified in Rule 12(h)(2) can produce unnecessary and costly

10   delays."  *In re Apple*, 846 F. 3d at 318.  Drawing on the "practical wisdom" of other district

11   courts before it, bearing in the mind the Circuit's "forgiving" stance, *id.* at 319, this court will

12   reach the merits of defendants' motion, rather than leave the questions it raises for resolution at a

13   later date.

14         **3.      Rule 12(g)**

15         Plaintiff also argues that Rule 12(g) bars the court from considering defendants' motion

16   because their previous motion for partial summary judgment did not rely on any facts extrinsic to

17   the complaint, meaning the motion operated as a motion to dismiss.  Opp'n at 14.  In support of

18   this argument, plaintiff claims defendants only "styled" the motion as one for summary judgment

19   because they had already answered plaintiff's initial complaint.  *Id.*  Plaintiff also points to

20   defendants' statement in the summary judgment motion, that they attacked plaintiff's claims as "a

21   matter of law."  *Id.* (quoting Mot. for Partial Summ. J. at 2–3).  Because the instant motion

22   involves defenses available to defendants that they "could and should have" raised years ago,

23   plaintiff asserts the motion "only creates more delay," four years now after the case began, and

24   more than six months after the Ninth Circuit's remand.  *Id.* at 15.

25         Defendants argue that plaintiff provides no support for his "proposition" that defendants'

26   previous Rule 56 motion functioned as a Rule 12 motion.  Reply at 7.  Even if the court were to

27   construct the previous motion as plaintiff urges, defendants claim the court may still entertain the

28   /////

1  instant motion because defendants have not filed it for a "strategically abusive purpose" and delay

2  would have "no apparent purpose."  *Id.* at 8 (citing *In re Apple*, 846 F.3d at 317–20).

3        Rule 12(g) provides, in pertinent part, "Except as provided in Rule 12(h)(2) or (3), a party

4  that makes a motion under this rule must not make another motion under this rule raising a

5  defense or objection that was available to the party but omitted from its earlier motion."  Fed.

6  Rule Civ. P. 12(g)(2).  Plaintiff's argument neglects the full text of Rule 12(g), specifically the

7  first clause allowing for an exception as "provided in Rule 12(h)(2) or (3)."  *Id.*  As noted above,

8  Rule 12(h)(2) allows raising the defense of failure to state a claim up to the point of trial and does

9  not operate as a straightjacket in the face of practical considerations.  Moreover, the Ninth Circuit

10  has clarified that to properly understand it, a court must "read Rule 12(g)(2) in light of the general

11  policy of the Federal Rules of Civil Procedure, expressed in Rule 1."  *In re Apple*, 846 F.3d at

12  318.  Rule 1 declares that courts should construe the Federal Rules "to secure the just, speedy,

13  and inexpensive determination of every action and proceeding."  *Id.* (citing Fed. R. Civ. P. 1).

14  The court adheres to the policy of efficient resolution the Rules embody, and so proceeds to

15  considering the merits of defendants' motion.

16        **B.**     **Fourteenth Amendment Claim (First Claim)**

17        Defendants maintain plaintiff's complaint contains no factual allegations to support an

18  equal protection claim because the complaint does not allege facts showing state discrimination,

19  with intent or purpose, on account of plaintiff's membership in a protected class.  MTD at 9

20  (citing *Engquist v. Ore. Dep't of Agric.*, 553 U.S. 591, 607 (2008) (additional citations omitted)).

21  In opposition, plaintiff clarifies the violation of his fundamental right to free speech, rather than

22  any discrimination based on his membership in a protected class, serves as the basis for his equal

23  protection claim.  Opp'n at 26–27 (citing, *inter alia*, *United States v. Juvenile Male*, 670 F.3d

24  999, 1009 (9th Cir. 2012) (identifying standards of liability for an equal protection claim);

25  *Silveira v. Lockyer*, 312 F.3d 1052, 1087–88 (9th Cir. 2002) (explaining "[s]tatutes infringing on

26  fundamental rights are subject to the same searching review," i.e., strict scrutiny, as "[s]tatutes

27  that treat individuals differently based on race, alienage, or national origin"), *abrogated in part on*

28  *other grounds as stated in Gallinger v. Becerra*, 898 F.3d 1012, 1017 (9th Cir. 2018).  In reply,

1    defendants argue the operative complaint "fails to state facts limiting his equal protection claim

2    on this basis and fails to give Defendants notice of what theory Plaintiff even was asserting . . . ."

3    Reply at 9.

4          "The First Amendment provides that Congress 'shall make no law . . . abridging the

5    freedom of speech, or of the press; or the right of people peaceably to assemble, and to petition

6    the Government for a redress of grievances.'"  *Meyer v. Grant*, 486 U.S. 414, 420 (1988)

7    (alteration in original).  First Amendment rights "are among the fundamental personal rights and

8    liberties which are secured to all persons by the Fourteenth Amendment against abridgment by a

9    State."  *Id.* (quoting *Thornhill v. Alabama*, 310 U.S. 88, 95 (1940)).  Any state action alleged to

10   violate or limit this "fundamental personal right and liberty" is subject to strict scrutiny.

11   *Thornhill*, 310 U.S. at 95.

12         Plaintiff's complaint exhibits some pleading deficiencies, which defendants correctly

13   identify.  Plaintiff specifically references his equal protection claim on only one occasion.

14   SAC ¶ 66 ("depriving PLAINTIFF of the clearly-established and well-established constitutional

15   . . . right to be free from deprivation of equal protection of the law as secured by the Fourteenth

16   Amendment").  His description, which fails to specify the fundamental right theory of liability

17   and how defendants' actions do not survive strict scrutiny, does not provide defendants with

18   notice of a "cognizable legal theory."  At hearing, plaintiff again clarified he is not making a

19   claim based on membership in a protected class; defendants acknowledged this clarification that

20   plaintiff brings an Equal Protection claim under a fundamental right theory of liability and agreed

21   that with this clarification, an amendment of the complaint on this point is not necessary.  The

22   court agrees.

23         Defendants also argue plaintiff "does not plead any facts to suggest Chapter 8.56 involves

24   'the *unequal* burdening of a fundamental right . . .' such that it would violate the Equal Protection

25   Clause."  Reply at 9 (emphasis in original) (quoting *Juvenile Male*, 670 F.3d at 1009).  This

26   argument is unavailing, as it does not take account of the totality of the record here, including the

27   operative complaint in full.  As plaintiff points out, the Ninth Circuit has already determined the

1    ordinance here[1] violated plaintiff's fundamental right to free speech.  *See Cuviello*, 944 F.3d at

2    832 ("[T]he City's permit requirement violated and continues to infringe on [plaintiff's] free

3    speech rights.").  Additionally, plaintiff pleads numerous occasions on which defendants

4    allegedly interfered with plaintiff's fundamental right of free speech.  SAC ¶¶ 41, 43–46.

5          The court denies defendants' motion to dismiss plaintiff's Fourteenth Amendment claim,

6    with the clarification provided above.

7          **C.      Article I, Sections 2(a) & 3(a) of the California Constitution (Second Claim)**

8          Defendants argue plaintiff has not stated a viable claim for violation of his liberty speech

9    rights under Article I, Sections 2(a) and 3(a) of the California Constitution.  MTD at 11.  In

10   opposition, plaintiff characterizes defendants' arguments as a "misunderstanding of the law and

11   the nature of [p]laintiff's claim" because plaintiff seeks only equitable relief, rather than damages,

12   in his California constitutional rights claims.  Opp'n at 15–16.  Defendants concede this point in

13   their reply.  Reply at 12.

14         Therefore, the court denies defendants' motion to dismiss plaintiff's second claim.

15         **D.      Bane Act (Fourth Claim)**

16         Defendants assert the court must dismiss plaintiff's fourth claim under the Bane Act,

17   California Civil Code § 52.1,[2] because plaintiff did not "plead facts showing violence or

---

    [1] The Ninth Circuit clarified that the later amended ordinance is the same in all material
respects as the original, namely with respect to the permit requirement, and differs only in
elimination of the required fee: "The only meaningful difference between Section 8.56.030 and
the prior version of the permit requirement is the elimination of any fee. Although this lessens the
asserted harm caused by the permit requirement, it does not eliminate it."  *Cuviello*, 944 F.3d at
825.  The court thus found plaintiff's appeal was not moot and so turned to the merits.

    [2] The Tom Bane Civil Rights Act, California Civil Code § 52.1(b)–(c), provides, in
pertinent part:

> If a person or persons, whether or not acting under color of law,
> interferes by threat, intimidation, or coercion, or attempts to interfere
> by threat, intimidation, or coercion, with the exercise or enjoyment
> by any individual or individuals of rights secured by the Constitution
> or laws of the United States, or of the rights secured by the
> Constitution or laws of this state, . . .  [that person] may institute and
> prosecute in his or her own name and on his or her own behalf a civil
> action . . . .

1   intimidation by threat of violence by the accused defendant."  MTD at 12 (emphasis omitted)

2   (citing, *inter alia*, *Clifford v. Regents of Univ. of Cal.*, No. 2:11-CV-02935, 2012 WL 1565702, at

3   *9 (E.D. Cal. Apr. 30, 2012), *aff'd*, 584 F. App'x 431 (9th Cir. 2014)); *see also* Reply at 12.  A

4   "verbal warning by officers to cease activities" does not, according to defendants, support a

5   court's finding the City violated the Bane Act.  Opp'n at 12 (citing *Center for Bio-Ethical*

6   *Reform, Inc. v. The Irvine Co., LLC*, 37 Cal. App. 5th 97 (2019)).  In opposition, plaintiff points

7   the court to the text of the Bane Act and precedent characterizing "threats of unconstitutional

8   enforcement actions" as "coercion" under the Bane Act.  Opp'n at 16–17 (quoting *Rodriguez v.*

9   *Cty. of Los Angeles*, 891 F.3d 776, 800 (9th Cir. 2018) (emphasizing California Supreme Court

10  has not held "that § 52.1 requires threats, intimidation, or coercion beyond that inherent in the

11  constitutional violation itself.")) (additional citations omitted).

12          On its face, the Bane Act provides that a person whose "exercise or enjoyment" of

13  constitutional rights has been interfered with "by threat, intimidation, or coercion" may bring a

14  civil action for damages and injunctive relief.  *Rodriguez*, 891 F.3d at 799.  The essence of such a

15  claim is that "the defendant, by the specified improper means . . . tried to or did prevent the

16  plaintiff from doing something he or she had the right to do under the law or force the plaintiff to

17  do something he or she was not required to do."  *Austin B. v. Escondido Union Sch. Dist.*,

18  149 Cal. App. 4th 860, 883 (2007).  As the Ninth Circuit has recently held, based on an analysis

19  of state court precedent, the Bane Act does not require "threat, intimidation or coercion" separate

20  from or even "in addition to" the alleged constitutional violations, which in that case concerned

21  the Eighth Amendment.  *Rodriguez*, 891 F.3d at 799–801 (citing *Venegas v. Cty of Los Angeles*,

22  32 Cal. 4th 820 (2004), and collecting cases).  But the Bane Act specifies liability may not be

23  based on "speech alone" unless "the speech itself threatens violence."  *Cuviello v. City of*

24  *Stockton*, No. CIV. S-07-1625 LKK, 2009 WL 9156144, at *17 (E.D. Cal. Jan. 26, 2009) (citing

25  Cal. Civ. Code § 52.1(k)).

26          California appellate courts remain undecided on whether a Bane Act claim requires a

27  threat of violence or whether intimidating or coercive speech however nonviolent suffices, and

28  the state Supreme Court has not resolved the question.  *See* Judicial Council of California Civil

Jury Instruction 3066 ("CACI 3066"), Directions for Use (citing *Shoyoye v. Cty. of Los Angeles*, 203 Cal. App. 4th 947, 959 (2012) (declining to "decide that every plaintiff must allege violence or threats of violence in order to maintain an action under section 52.1"); and *City and Cty. of San Francisco v. Ballard*, 136 Cal. App. 4th 381, 408 (2006) (also noting issue but finding it unnecessary to address)). As plaintiff is well aware, *see* Opp'n at 17, this court and other federal courts in California have found that a threat of arrest from law enforcement can constitute "coercion" under the Bane Act, even without a threat of violence. *Black Lives Matter-Stockton Chapter v. San Joaquin County Sheriff's Office*, 398 F. Supp. 3d 660, 680 (E.D. Cal. 2019); *see also Cuviello*, 2009 WL 9156144 at *17 ("[T]he particular coercive power of law enforcement officers has led courts to impose liability when detention, rather than violence, is threatened.") (citing *Cole v. Doe*, 387 F. Supp. 2d 1084, 1102 (N.D. Cal. 2005)); *Cuviello v. City & Cty. of San Francisco*, 940 F. Supp. 2d 1071, 1103 (N.D. Cal. 2013) (Bane Act claim based on violation of free speech adequately alleged where plaintiffs pled defendants "threatened them with arrest" if they protested); *Whitworth v. City of Sonoma*, No. A103342, 2004 WL 2106606, at *6–7 (Cal. Ct. App. Sept. 22, 2004) (unpublished) (officer's unspoken threat of arrest preventing plaintiff from entering meeting room sufficient to state Bane Act claim).[3]

Here, plaintiff does not allege Officer Koutnik threatened him with arrest. SAC ¶ 41 ("PLAINTIFF asked DEFENDANT KOUTNIK if he would be arrested if he continued to use the bullhorn and DEFENDANT KOUTNIK replied no . . . ."). Instead, plaintiff claims Officer Koutnik threatened to seize plaintiff's bullhorn at the demonstration. *Id.* ("DEFENDANT KOUTNIK told PLAINTIFF without a permit he could not use the bullhorn . . . . [H]e would confiscate the bullhorn as evidence of a crime . . . ."). Then, "for no other reason than" Officer Koutnik's threat of seizure, plaintiff ceased using his bullhorn at the demonstration on October 31, 2015. *Id.* In addition, Officer Koutnik's threat of seizure allegedly led plaintiff to refrain

---

[3] "Even though unpublished California Courts of Appeal decisions have no precedential value under California law, [federal courts are] 'not precluded' from considering such decisions 'as a possible reflection of California law.'" *Roberts v. McAfee, Inc.*, 660 F.3d 1156, 1167 n.6 (9th Cir. 2011) (quoting *Emp'rs Ins. of Wausau v. Granite State Ins. Co.*, 330 F.3d 1214, 1220 n.8 (9th Cir. 2003)).

1    from bringing this bullhorn to future demonstrations on November 21, 2015, May 28, 2016 and

2    June 18, 2016.  *Id.* ¶ 43.

3         A closely analogous case, given the allegations here of speech involving the threat of a

4    seizure, is a California appellate decision defendants cite: *Allen v. City of Sacramento*, 234 Cal.

5    App. 4th 41 (2015).  *See* MTD at 13.  Plaintiffs in that case were homeless persons, and City of

6    Sacramento police officers allegedly, on three occasions, "detained [them] and seized and

7    removed [their] personal property including tents, sleeping bags and personal items, and cited the

8    detainees for violating the camping ordinance."  *Allen*, 234 Cal. App. 4th at 50.  On one of those

9    occasions, the police officers also arrested the homeless persons.  *Id.*  The court did not devote

10   much analysis to the seizure of plaintiffs' property, but ultimately found the "wrongful arrest or

11   detention, without more, does not satisfy both elements of section 52.1."  *Id.* at 69 (citing

12   *Shoyoye*, 203 Cal. App. 4th at 947, 959–960 (involving a wrongful detention in which plaintiff

13   was lawfully arrested, but held for two weeks longer than the original arrest order and in which

14   the court held "that where coercion is inherent in the constitutional violation alleged, as it is in an

15   unreasonably prolonged detention, section 52.1 requires a showing of coercion independent from

16   the coercion inherent in the wrongful detention.")).  When the arrest is itself the alleged

17   constitutional violation, the court found plaintiff must also demonstrate "coercion beyond the

18   coercion inherent in any arrest."  *Allen*, 234 Cal. App. 4th at 69.

19        In opposition, plaintiff points to cases critiquing the *Allen* court's reasoning.  *See* Opp'n at

20   18 (quoting *B.B. v. Cty. of Los Angeles*, 25 Cal. App. 5th 115, 130 n.13 (2018) ("Because the

21   Bane Act's text plainly prohibits deliberate interference with an individual's civil rights by threat,

22   intimidation, or coercion, we disagree with *Allen* and *Shoyoye* to the extent they hold an

23   intentional unlawful arrest is insufficient to establish a Bane Act violation."), *rev'd*, 10 Cal.5th 1

24   (2020); *Adamson v. City of San Francisco*, No. 13-CV-5233-DMR, 2015 WL 5467744, at *9

25   (N.D. Cal. Sep. 17, 2015) ("[T]his court has previously held, consistent with the weight of

26   authority in this district, that a section 52.1 claim 'does not require threats, coercion, or

27   intimidation independent from the threats, coercion, or intimidation inherent in the alleged

28   constitutional or statutory violation.'") (additional citations omitted)).  Plaintiff is correct that

14

1    *Allen* is not the only relevant authority here; in fact, the Ninth Circuit has found the reasoning in

2    *Allen*, mainly its emphasis on coercion beyond that involved in any constitutional violation, does

3    not accurately reflect either the Bane Act or the totality of state precedent on this issue.

4    *Rodriguez*, 891 F.3d at 800.  That being said, the *B.B.* and *Adamson* cases plaintiff cites also do

5    not fully support plaintiff's position.

6          Plaintiff is also correct, however, that persuasive case law recognizes a logical "inference"

7    to be drawn from not only unlawful behavior but also of officers who "acted spitefully" to find

8    the alleged constitutional violation qualifies as a "threat, intimidation, or coercion" for purposes

9    of a Bane Act claim.  Opp'n at 19 (quoting *Cornell* v. *City & Cty. of San Francisco*, 17 Cal. App.

10   5th 766, 796 (2017) (holding that the court's analysis of *Shoyoye* does not apply because plaintiff

11   "pleads and proves a constitutionally unlawful arrest," whereas in *Shoyoye* plaintiff alleged a

12   lawful arrest, but the crux of his claim was his "continued incarceration despite a judicial release

13   order") (additional citations omitted)).  "[T]he Bane Act requires 'a specific intent to violate the

14   arrestee's right to freedom from unreasonable seizure.'"  *Reese v. Cty. of Sacramento*, 888 F.3d

15   1030, 1043–44 (9th Cir. 2018) (quoting *Cornell*, 17 Cal. App. 5th at 384).  The text of the Bane

16   Act "connote[s] an element of intent" and the Judicial Council of California Civil Jury

17   Instructions have reflected this connotation.  *Id.* at 1044 (citing CACI 3066, which "characterizes

18   a Bane Act claim as one by the plaintiff that the defendant 'intentionally interfered with [or

19   attempted to interfere with] [his/her] civil rights by threats, intimidation or coercion.'" (emphasis

20   omitted)).

21          Plaintiff's allegations support such an inference, specifically "that because Koutnik was

22   not allowed to enforce section 8.56 and arrest Cuviello [with the city's enforcement policy of no

23   arrests], he had to find another way to stop Cuviello from using a bullhorn against his employer

24   Six Flags."  Opp'n at 19.  As pled, Officer Koutnik then threatened seizure of plaintiff's bullhorn

25   because he "had to find another way to stop Cuviello from using a bullhorn" and by doing so he

26   "acted outside the scope of section 8.56, and his discretionary authority under Vallejo Municipal

27   Code section 1.14.010."  *Id.*  In what is law of the case, the Ninth Circuit has determined the

28   original ordinance, and as amended, violated plaintiff's First Amendment right to free speech.  As

1   more fully discussed below, Officer Koutnik's threat exceeded his enforcement authority under

2   the law and ultimately was the "coercive but-for cause of Cuviello relinquishing his well-

3   established constitutional right to use a bullhorn." *Id.* (citing SAC ¶ 41).   Although plaintiff's

4   allegations include a threat of seizure as opposed to threats of detention or threats of arrest,

5   "[t]hese facts suffice to permit a conclusion" that Officer Koutnik "threatened" plaintiff with

6   seizure of his bullhorn "so as to deter [him] from lawfully exercising [his] rights." *Cuviello*,

7   2009 WL 9156144, at *18 (citing *Austin B.*, 149 Cal. App. 4th at 883).   Officer Koutnik's alleged

8   actions against the backdrop of the unconstitutional ordinance allow the court, at this stage, to

9   find that "coercion" under the Bane Act occurred here.  *See Rodriguez*, 891 F.3d at 800.

10       The court denies defendants' motion to dismiss plaintiff's Bane Act claim.

11       **E.    Qualified Immunity**

12       Defendants reason that Officer Koutnik is entitled to qualified immunity in the face of

13   plaintiff's § 1983 claims because plaintiff cannot show Officer Koutnik's conduct was "unlawful"

14   based on "existing precedent [that] 'squarely governs' the specific facts at issue." MTD at 10–11

15   (quoting *Kisela v. Hughes*, 138 S.Ct. 1148, 1152–53 (2018) (per curiam) (citation omitted));

16   Reply at 10–12.  In opposition, plaintiff argues Officer Koutnik is not entitled to qualified

17   immunity because plaintiff's fundamental right to free speech was "clearly established" and

18   Officer Koutnik did not act within his "discretionary authority" during the events in question.

19   *Id.* at 19–22.[4]

20       "Qualified immunity is a judge-made doctrine designed to 'balance[ ] two important

21   interests—the need to hold public officials accountable when they exercise power irresponsibly

22   and the need to shield officials from harassment, distraction, and liability when they perform their

23   duties reasonably.'"  *Haley v. City of Boston*, 657 F.3d 39, 47 (1st Cir. 2011) (alterations in

24   original) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)).  The doctrine is intended to

25   "give[] government officials breathing room to make reasonable but mistaken judgments about

---

[4]  Plaintiff also provides an extensive policy argument for abolishing the doctrine of qualified immunity.  Opp'n at 19, 22–26.  It is not this court, of course, that has the power to abolish the doctrine of qualified immunity.

1   open legal questions." *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011).  The two-pronged test

2   courts generally use to assess whether qualified immunity applies was first articulated in *Saucier*

3   *v. Katz*, 533 U.S. 194 (2001).  Under that test, the court first "decide[d] whether the facts that a

4   plaintiff has alleged or shown make out a violation of a constitutional right." *Pearson*, 555 U.S.

5   at 232 (citing *Saucier*, 533 U.S. at 201 and Fed. R. Civ. P. 12, 50, 56).  Then, "if the plaintiff []

6   satisfied this first step, the court [] decide[d] whether the right at issue was 'clearly established' at

7   the time of defendant's alleged misconduct." *Id.* (citing *Saucier*, 533 U.S. at 201).

8         As discussed above, the complaint here states a claim that Officer Koutnik's actions were

9   unconstitutional.  Only the second part of the qualified immunity test remains: whether that rule

10   was clearly established at the time.

11         When, as here, officers "act[] in reliance on a duly-enacted statute or ordinance," they are

12   "ordinarily entitled to qualified immunity." *Grossman v. City of Portland*, 33 F.3d 1200, 1209

13   (9th Cir. 1994).  "[L]iability may attach only where (1) the statute 'authorizes official conduct

14   which is patently violative of fundamental constitutional principles,' or (2) the official

15   'unlawfully enforces an ordinance in a particularly egregious manner, or in a manner which a

16   reasonable officer would recognize exceeds the bounds of the ordinance.'" *Tschida v. Motl*, 924

17   F.3d 1297, 1305 (9th Cir. 2019) (alterations in original) (quoting *Grossman*, 33 F.3d at 1209–10).

18         The ordinance here does not authorize conduct "patently violative of fundamental

19   constitutional principles."  The court thus considers whether the officer enforced the ordinance in

20   a "particularly egregious manner" or one that "exceeds the bounds of the ordinance."  Plaintiff

21   contends that Officer Koutnik's threatening to seize plaintiff's bullhorn exceeded the scope of his

22   discretionary authority under Vallejo Municipal Code § 8.56.  Opp'n at 20.  Vallejo Municipal

23   Code § 1.14.010 defines the powers of officers enforcing the municipal code as "all enforcement

24   powers delegated under California Penal Code Section 836.5."  Vallejo, California Municipal

25   Code § 1.14.010; *see also* Opp'n at 20.  California Penal Code § 836.5(a) articulates the arrest

26   powers of an officer as follows:

27         A public officer or employee, when authorized by ordinance, may arrest a person
28         without a warrant whenever the officer or employee has reasonable cause to believe
29         that the person to be arrested has committed a misdemeanor in the presence of the

1  officer or employee that is a violation of a statute or ordinance that the officer or
2  employee has a duty to enforce.

3  Cal. Penal Code § 836.5(a).  Plaintiff's analysis of the enforcement authority of municipal

4  officers as it applies to the actions alleged here is correct.  Under the Penal Code, officers have

5  the power to make an arrest, not to seize evidence without any arrest, and plaintiff clearly pleads

6  Officer Koutnik did not seek to arrest him and explicitly said he would not do so.  SAC ¶ 41.

7  Instead, Officer Koutnik threatened to seize plaintiff's bullhorn.  *Id.*

8       At hearing on the instant motion, defendants argued Officer Koutnik did not violate the

9  enforcement ordinance because it allows an officer to cite someone for a violation, release them,

10  and seize their property as evidence of the violation.  But as plaintiff noted in response, the

11  complaint does not include any allegations that Officer Koutnik threatened to cite plaintiff for

12  using the bullhorn; rather, he only threatened to seize plaintiff's bullhorn.  Because the complaint

13  only alleges a threat to seize the bullhorn, whether Officer Koutnik had the authority to cite or

14  threaten to cite plaintiff is irrelevant.

15       Officer Koutnik's alleged actions fall outside the enforcement authority the municipal

16  ordinance provided to him.  He conducted himself, therefore, in "a manner which a reasonable

17  officer would recognize exceeds the bounds of the ordinance."  *Grossman*, 33 F.3d at 1210.

18  Under *Grossman*, that fact alone would deprive Officer Koutnik of qualified immunity.  As the

19  Ninth Circuit held in that case, "an officer who unlawfully enforces an ordinance in a particularly

20  egregious manner, or in a manner which a reasonable officer would recognize exceeds the bounds

21  of the ordinance, will not be entitled to immunity even if there is no clear case law declaring the

22  ordinance or the officer's particular conduct unconstitutional."  *Id.*; *see also Pierce v. Multnomah*

23  *Cty., Or.*, 76 F.3d 1032, 1038–39 (9th Cir. 1996) (applying this rule to overturn a directed verdict

24  in the officer defendant's favor).  But in the years since *Grossman* was decided, the Ninth Circuit

25  has consulted existing case law even when it has concluded an officer exceeded the bounds of an

26  ordinance and even when it has cited *Grossman*.  *See, e.g.*, *Tarabochia v. Adkins*, 766 F.3d 1115,

27  1125–28 (9th Cir. 2014).  The Supreme Court also has often held in recent years that "officers are

28  entitled to qualified immunity under § 1983" unless the plaintiff establishes both that "they

1  violated a federal statutory or constitutional right" and that "the unlawfulness of their conduct

2  was 'clearly established at the time'" through "'controlling authority' or 'a robust consensus of

3  cases of persuasive authority.'"  *District of Columbia v. Wesby*, 138 S. Ct. 577, 589–90 (2018)

4  (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012), and *al–Kidd*, 563 U.S. at 735).  The

5  court thus considers whether cases decided at the time of the seizure clearly established that

6  Officer Kuitnik's actions were unconstitutional.

7        Clearly established law must be defined with a "high 'degree of specificity.'"  *Wesby*,

8  138 S. Ct. at 590 (quoting *Mullenix v. Luna*, 557 U.S. 7, 13 (2015) (per curiam)); *City of*

9  *Escondido, Cal. v. Emmons*, 139 S. Ct. 500, 503 (2019).  "[A] court must ask whether it would

10 have been clear to a reasonable officer that the alleged conduct 'was unlawful in the situation he

11 confronted.'"  *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1867 (2017) (quoting *Saucier*, 533 U.S. at 202).

12 Although "a case directly on point" is not required "for a right to be clearly established, existing

13 precedent must have placed the statutory or constitutional question beyond debate," *Kisela*, 138

14 S. Ct. at 1152 (quoting *White v. Pauly*, 137 S. Ct. 548, 551 (2017)), and must "'squarely govern[]'

15 the specific facts at issue," *id.* at 1153 (citing *Mullenix*, 577 U.S. at 13).  *See also Pike v. Hester*,

16 891 F.3d 1131, 1141 (9th Cir. 2018) ("An exact factual match is not required . . . .").  "The rule's

17 contours must be so well defined that it is 'clear to a reasonable officer that his conduct was

18 unlawful in the situation he confronted.'"  *Wesby*, 138 S. Ct. at 590 (quoting *Saucier*, 533 U.S. at

19 202).  Thus, "[t]he dispositive question is 'whether the violative nature of *particular* conduct is

20 clearly established.'"  *Ziglar*, 137 S. Ct. at 1866 (quoting *Mullenix*, 577 U.S. at 12) (emphasis,

21 alteration in original).

22       Where the existing cases are "too factually dissimilar to clearly establish a constitutional

23 violation" by an officer's actions, the officer is entitled to qualified immunity.  *Nicholson v. City*

24 *of Los Angeles*, 935 F.3d 685, 695 (9th Cir. 2019).  Although "general statements of the law are

25 not inherently incapable of giving fair and clear warning to officers," in some circumstances "a

26 general constitutional rule already identified in the decisional law may apply with obvious clarity

27 to the specific conduct in question, even though 'the very action in question has [not] previously

28 /////

19

1   been held unlawful.'" *United States v. Lanier*, 520 U.S. 259, 271 (1997) (alteration in original)

2   (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

3         Because resolving whether the asserted federal right was clearly established presents a

4   pure question of law, the court draws on its "full knowledge" of relevant precedent rather than

5   restricting its review to cases identified by plaintiff. *See Elder v. Holloway*, 510 U.S. 510, 516

6   (1994) (quoting *Davis v. Scherer*, 468 U.S. 183, 192 n.9 (1984)). Ultimately, "the prior precedent

7   must be 'controlling'—from the Ninth Circuit or Supreme Court—or otherwise be embraced by a

8   'consensus' of courts outside the relevant jurisdiction." *Sharp v. Cty. Of Orange*, 871 F.3d 901,

9   911 (9th Cir. 2017) (quoting *Wilson v. Layne*, 526 U.S. 603, 617 (1999)).

10        Here, it was clearly established at the time of the events alleged that prior restraints on

11  speech such as the City's Ordinance are unconstitutional. *See, e.g.*, *Neb. Press Ass'n v. Stuart*,

12  427 U.S. 539, 559 (1976) ("[P]rior restraints on speech and publication are the most serious and

13  the least tolerable infringement on First Amendment rights."). It had been clearly established for

14  decades that bullhorns, and even much louder devices, are "indispensable instruments of effective

15  public speech." *Saia v. People of State of New York*, 334 U.S. 558, 561 (1948).

16        It also was clearly established that a permitting requirement is unconstitutional, as the

17  Ninth Circuit held in this case, if it "exceeds the scope of the municipality's significant interests,"

18  if it applies indiscriminately against individuals and large groups alike, if it is "geographically

19  overinclusive," or if there are obvious narrower alternatives. *See* 944 F.3d at 829–30 (citing

20  *Comite de Jornaleros de Redondo Beach v. City of Redondo Beach*, 657 F.3d 936, 949 (9th Cir.

21  2011); *Long Beach Area Peace Network v. City of Long Beach*, 574 F.3d 1011, 1038 (9th Cir.

22  2009); *Berger v. City of Seattle*, 569 F.3d 1029, 1039 (9th Cir. 2009); and *Santa Monica Food*

23  *Not Bombs v. City of Santa Monica*, 450 F.3d 1022, 1038–39 (9th Cir. 2006)). "It is therefore not

24  surprising that [the Ninth Circuit] and almost every other circuit to have considered the issue have

25  refused to uphold registration requirements that apply to individual speakers or small groups in a

26  public forum," such as this one. *Berger*, 569 F.3d at 1039. And as the Ninth Circuit held here,

27  the City's ordinance falls short of each of these standards. It "requires a permit for *any* use of a

28  /////

1    sound-amplifying device at *any* volume by *any* person at *any* location," even near a road outside a

2    large, loud amusement park.  *Id.* at 830 (emphasis in original).

3           Because the right at issue here was clearly established at the relevant time, defendant is

4    not entitled to qualified immunity.

5    **IV.    CONCLUSION**

6           The motion to dismiss is **denied**.

7           The court accordingly sets the following dates and deadlines:

8           • Fact Discovery Cutoff: May 7, 2021

9           • Expert Disclosures: May 21, 2021

10          • Rebuttal Expert Disclosures: June 11, 2021

11          • Expert Discovery Cutoff: July 16, 2021

12          • Last Day *for Hearing* on Dispositive Motions: September 17, 2021

13   This order resolves ECF No. 73.

14          IT IS SO ORDERED.

15   DATED:  November 16, 2020.

_____
CHIEF UNITED STATES DISTRICT JUDGE